# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **ISABELLE FORD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3-04-0366** |
| | ) | **Judge Knowles** |
| **STATE OF TENNESSEE,** | ) | |
| **DEPARTMENT OF ENVIRONMENT** | ) | |
| **AND CONSERVATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

### I.  Introduction and Background

This matter is before the Court upon Defendant's Motion for Summary Judgment.

Docket Entry No. 24.  In support of that Motion, Defendant has contemporaneously filed a

Memorandum of Law (Docket Entry No. 25), a Statement of Material Facts (Docket Entry No.

26), Excerpts and Exhibits from the Depositions of Isabelle Ford (Docket Entry Nos. 27-2, 27-3),

Deborah Mann (Docket Entry No. 27-4), Mohammad Naqvi (Docket Entry No. 27-5), and

Donna Washburn (Docket Entry No. 27-6), and the Affidavits of Donna Washburn (Docket

Entry No. 27-7) and Deborah Mann (Docket Entry No. 27-8).

Plaintiff has filed a Response in Opposition to the Motion (Docket Entry No. 30), as well

as a Response to Defendant's Statement of Material Facts (Docket Entry No. 31).  Plaintiff has

additionally filed Excerpts from the Depositions of Deborah Mann (Docket Entry No. 32-3),

Susan Watts (Docket Entry No. 32-4), Mohammed Naqvi (Docket Entry No. 32-5), Donna

1

Washburn (Docket Entry Nos. 32-2, 32-6), and Isabelle Ford (Docket Entry No. 33-2).

Plaintiff, an African-American female, alleges failure to promote because of discrimination based upon race and sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended ("Title VII"). Docket Entry No. 1. Plaintiff timely filed charges with the Equal Employment Opportunity Commission ("EEOC") and the EEOC issued a right-to-sue letter on January 29, 2004. *Id.* Plaintiff filed her Complaint on April 27, 2004. *Id.* Plaintiff seeks "an award of backpay, frontpay, emotional and consequential damages, punitive damages, reasonable attorneys' fees and for any and all other damages which were incurred," as well as costs, prejudgment interest, and any other "general relief which the Court may deem proper." *Id.*

Defendant filed its Answer denying liability. Docket Entry No. 8. In its Answer, Defendant argues, *inter alia*, that Plaintiff's sex discrimination claims are barred because Plaintiff only alleged racial discrimination in her EEOC Charge; that Plaintiff cannot establish her prima facie case because the person who was promoted to the position that Plaintiff sought was also a minority and therefore a member of the protected class; and that Defendant has demonstrated legitimate, non-discriminatory reasons for selecting the other individual for the position. *Id.*

Upon Consent of the parties (Docket Entry No. 20), Judge Haynes transferred this case to the undersigned for final disposition (Docket Entry No. 21).

Defendant filed the instant Motion for Summary Judgment and supporting materials on August 29, 2005. Docket Entry Nos. 24-27. Defendant argues, *inter alia*, that "Plaintiff fails to make a showing sufficient to establish the existence of direct or circumstantial evidence in

2

support of her case"; that Plaintiff cannot demonstrate that Defendant's stated reasons for selecting an alternate candidate for the position that Plaintiff sought were pretextual; that there is no genuine issue as to material fact; and that it is entitled to a judgment as a matter of law.  *See* Docket Entry No. 25.

Plaintiff filed her Response and accompanying submissions on October 6, 2005.[1]  Docket Entry Nos. 30-33.  Plaintiff argues, *inter alia*, that "Defendant has conceded, for purposes of summary judgment, that Plaintiff can establish a *prima facie* case of discrimination using the inferential model applicable to failure to promote cases"; that Defendant's proffered reasons for selecting a competing candidate for the position that Plaintiff sought are "totally false, contradictory and/or insufficient to explain why Plaintiff was not selected"; and that she has demonstrated the existence of a disputed material fact about Defendant's alleged legitimate non-discriminatory reasons for its promotion decision, such that granting summary judgment would be inappropriate.  Docket Entry No. 30.

For the reasons set forth below, the undersigned concludes that there is a genuine issue as to material fact with regard to whether Defendant's stated reasons for selecting an alternate candidate for the position that Plaintiff sought are pretextual.  Defendant is not entitled to a judgment as a matter of law, and Defendant's Motion for Summary Judgment will therefore be DENIED.

---

[1] On September 28, 2005, Plaintiff filed a Motion for an extension of time in which to file her response.  Docket Entry No. 28.  On October 5, 2005, the undersigned granted Plaintiff's Motion.  Docket Entry No. 29.  Plaintiff's Response, therefore, is timely.

3

## II.  Facts[2]

Plaintiff is an African-American female.  Docket Entry Nos. 27-2, 27-3, Deposition of Isabelle Ford ("Plaintiff's Dep."), p. 15.

Defendant hired Plaintiff in January 1999.  Plaintiff's Dep., pp. 39-40.  Plaintiff's initial classification was Environmental Protection Specialist 1.  Docket Entry No. 1, Complaint, ¶ 3.  In June 1999, Plaintiff was assigned to Defendant's Underground Storage Tank Division.  Plaintiff's Dep., pp. 39-40.  Plaintiff was subsequently promoted from Environmental Protection Specialist 1 to Environmental Protection Specialist 3, a two-step pay increase.  Complaint, ¶¶ 3; 4.

On November 29, 2002, Plaintiff applied for a promotion to an Environmental Protection Specialist 5 position.  Complaint, ¶ 5.  Defendant's policies permitted it to "pull either a department-wide or statewide register or list of eligible employees for the 2003 promotion from the Tennessee Department of Personnel ("TDOP")."  Plaintiff's Dep., Ex. 3; Complaint, ¶ 5.  When generating a list of eligible employees who may be considered for a particular job opening, the TDOP ranks the eligible employees based on a score it assigns to the eligible employees using criteria such as educational background and relevant experience.  *Id.*; Docket Entry No. 27-6, Deposition of Donna Washburn ("Washburn Dep."), pp. 52-53.

Defendant pulled a statewide register or list of eligible employees for the 2003 promotion.  Complaint, ¶ 5.  Ms. Deborah Mann, a female, was the Corrective Action Program Manager for Defendant's Division of Underground Storage Tanks and is the official who made

---

[2] The following facts are in a form required by Fed. R. Civ. P. 56, and are undisputed, unless otherwise noted.

4

the decision to pull a statewide list of eligible employees for the 2003 promotion position. Docket Entry No. 27-4, Deposition of Deborah Mann ("Mann Dep."), p. 83; Docket Entry No. 27-8, Affidavit of Deborah Mann ("Mann Aff."), ¶ 5. Ms. Mann pulled a statewide list of eligible employees in order to have the largest possible pool of candidates from whom to choose. Mann Dep., p. 90.

In January 2003, Defendant invited Plaintiff to interview for the available Environmental Protection Specialist 5 position within the Division of Underground Storage Tanks. Plaintiff's Dep., p. 189. Ms. Donna Washburn and Ms. Susan Watts conducted Plaintiff's interview. *Id.*, pp. 87-88. At the time of her interview, Plaintiff was classified as an Environmental Protection Specialist 4. *Id.*, pp. 83-84.

Mr. Mohammad Naqvi, another employee working for Defendant in the Division of Underground Storage Tanks, also interviewed for the Environmental Protection Specialist 5 position. Complaint, ¶ 7. Mr. Naqvi is an Asian male of Pakistani descent who was born in India. Docket Entry No. 27-5, Deposition of Mohammad Naqvi ("Naqvi Dep."), p. 7. Ms. Mann and Ms. Watts conducted Mr. Naqvi's interview. *See, e.g.,* Mann Dep., pp. 43-44; Docket Entry No. 32-4, Deposition of Susan Watts ("Watts Dep."). At the time of his interview, Mr. Naqvi was classified as an Environmental Protection Specialist 3. Complaint, ¶ 7.

Both Plaintiff and Mr. Naqvi were among the top five scoring employees listed on the statewide list of eligible employees who were interviewed or considered for the 2003 promotion. Plaintiff's Dep., Ex. 3; Mann Dep., p. 89. Defendant considered four minority males and one minority female, in addition to Plaintiff and Mr. Naqvi, for the 2003 promotion. Mann Dep., Ex. 4.

5

Ms. Mann met with Ms. Washburn and Ms. Watts to discuss the applicants prior to offering the position to any candidate, but Ms. Mann was ultimately the "sole decision maker" who decided to whom to offer the 2003 promotion. Mann Dep., pp. 47-49; Mann Aff., ¶ 4. Ms. Mann offered Mr. Naqvi the Environmental Protection Specialist 5 position, and he accepted it. *Id.*

At the time that Ms. Mann decided to offer Mr. Naqvi the 2003 promotion, there were females in Defendant's upper management, as well as in the Division of Underground Storage Tanks. Mann Aff., ¶ 6.

Defendant has not retaliated against Plaintiff for having filed this civil action in Federal court or for filing any formal or informal complaints regarding the subject matter of this litigation. Plaintiff's Dep., pp. 20-25.

### III.  Analysis

#### A.  Summary Judgment Standards

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548,

2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party.  *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial.  The nonmoving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial."  *Gaines v. Runyon*, 107 F.3d 1171, 1174-75 (6th Cir. 1997).

The court should also consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Street*, 886 F.2d at 1479.  If the evidence offered by the nonmoving party is "merely colorable," or "is not significantly probative," or enough to lead a fair-minded jury to find for the nonmoving party, the Motion for summary judgment should be granted.  *Anderson*, 477 U.S. at 249-252.

If a nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273.  When this occurs, the moving party is entitled to summary judgment as a matter of law.  *Id.* at 322-23, 106

7

S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

**B.  42 U.S.C. § 2000e**

Title VII of the Civil Rights Act of 1964 ("Title VII") protects employees from

discrimination on the basis of an individual's race, color, religion, sex, or national origin, and

provides, in part:

> It shall be an unlawful employment practice for an employer--
>
> (1) to fail or refuse to hire or to discharge any individual, or
> otherwise to discriminate against any individual with
> respect to his compensation, terms, conditions, or
> privileges of employment, because of such individual's
> race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for
> employment in any way which would deprive or tend to
> deprive any individual of employment opportunities or
> otherwise adversely affect his status as an employee,
> because of such individual's race, color, religion, sex, or
> national origin.

42 U.S.C. § 2000e-2.

Federal courts do not have jurisdiction to hear Title VII claims unless the claimant

explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out

of the EEOC charge.  *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 (6th Cir. 1998)

(*citing Ang v. Procter & Gamble Co.,* 932 F.2d 540, 544-45 (6th Cir. 1991)).  Thus, as a

prerequisite to bringing a Title VII discrimination claim in federal court, a claimant is required to

file a charge of discrimination or retaliation with the EEOC and is precluded from seeking

judicial review until the Commission has made a final disposition of his claim.  42 U.S.C. §

2000e-5.  *See also, United Air Lines, Inc. v. Evans*, 431 U.S. 553, 554, 97 S. Ct. 1885, 1887, 52

L. Ed. 2d 571 (1977).  The wording of the allegations in the EEOC charge does not, however,

8

have to be exact or all-encompassing; rather, the court may consider allegations not explicitly

stated in the EEOC charge if those allegations could reasonably be expected to grow out of the

charge of discrimination.  *Tipler v E. I. du Pont de Nemours & Co.*, 433 F.2d 125, 131 (6th Cir.

1971) (*citing Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 465-66 (5th Cir. 1970)*; King v.

Georgia Power Co.*, 295 F.Supp. 943 (N.D. Ga. 1968)).

A plaintiff may establish a claim of discrimination under Title VII either by introducing

direct evidence of discrimination, or by proving circumstantial evidence that would support an

inference of discrimination.  *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000),

*citing Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir.1997).  "The direct evidence

and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or

the other, not both."  *Id.*

Plaintiff in the case at bar admits that there is no direct evidence that Defendant's

decision to promote Mr. Naqvi was motivated by sex and/or by race.  Plaintiff's Dep., pp. 74-82;

84-85; 164-168.  Accordingly, Plaintiff lacks direct evidence of discrimination.

If the plaintiff lacks direct evidence of discrimination, the circumstantial evidence

approach is used and the *McDonnell Douglas-Burdine* tripartite test is employed.  *See

McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), as

later clarified by *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S. Ct. 1089, 67

L. Ed. 2d 207 (1981).  The *McDonnell Douglas-Burdine* tripartite test requires the plaintiff to

first establish a prima facie case of discrimination.  *Id.*  If the plaintiff is able to do so, a

mandatory presumption of discrimination is created and the burden shifts to the defendant to

articulate some legitimate, nondiscriminatory reason for the employee's rejection.  *Id.*  If the

9

defendant carries this burden, the plaintiff must then prove that the proffered reason was actually pretextual. *Id.* The plaintiff may establish pretext by showing that, 1) the stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons; or 3) the stated reasons were insufficient to explain the defendant's action. *Id. See also, Cicero v. Borg-Warner Automotive, Inc.,* 280 F.3d 579, 589 (6th Cir. 2002). "A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

Once the plaintiff has established a prima facie claim and has introduced evidence of pretext such that the jury could reject the defendant's explanation, it is the province of the jury to weigh the evidence, draw all reasonable inferences therefrom, and make credibility determinations. *Reeves v. Sanderson Plumbing Prod. Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 2110 (2000). If a reasonable trier of fact could disbelieve the defendant's proffered reasons, then granting summary judgment would be inappropriate. *Id.*

Although Defendant, in its Answer, argues that Plaintiff cannot raise her sex discrimination claims because she only alleged racial discrimination in her EEOC Charge and that Plaintiff cannot establish her prima facie case because Mr. Naqvi, the person who was promoted to the position that Plaintiff sought, was also a minority, Defendant's Motion for Summary Judgment and supporting materials do not address these arguments; instead Defendant focuses on its "legitimate, non-discriminatory reasons" for promoting Mr. Naqvi. *See, e.g,* Docket Entry No. 30. Defendant has apparently abandoned its initial arguments and conceded, for the purposes of Summary Judgment, that Plaintiff can establish her prima facie claims of sex

10

and/or race discrimination under Title VII.

As has been discussed above, once Plaintiff has established her prima facie case, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for her rejection. Defendant proffers numerous reasons for its selection of Mr. Naqvi over Plaintiff for the 2003 Environmental Protection Specialist 5 position. With regard to the candidates in general, Defendant maintains that it reached its decision to promote Mr. Naqvi after consideration of each interviewee's application, resume, educational background, work history and experience, answers to oral and written interview questions, potential to fulfill new job tasks, and "fit" with the position. *See, e.g.,* Docket Entry No. 25; Plaintiff's Dep., Exs. 5-9.

Defendant's articulated reasons for selecting Mr. Naqvi over Plaintiff specifically (as opposed to the other candidates) include that: Plaintiff "did not interview as well" as Mr. Naqvi; she did not bring her application or resume to the interview, as was requested (but that Mr. Naqvi did); she indicated in the interview that "she liked to have tasks" (as opposed to Mr. Naqvi's being considered a "self-starter"); and her experience as an inspector was not as strong as Mr. Naqvi's military experience because "[a]n inspector looks at an underground storage tank system and identifies leaks," while "Mr. Naqvi's military experience dealt more with corrective action and remediation of environmental problems caused by leaks [which] was considered to be more helpful for the Environmental Protection Specialist 5 position." Plaintiff's Dep., Ex. 9. Additionally, the "interviewers were impressed that Mr. Naqvi was working on his master's degree, and that he was doing research with the United States Geological Survey on groundwater flow in a karst environment," and that Mr. Naqvi had "taken the initiative to put together a spreadsheet for technical guidance document to help review." *Id.* Ms. Mann ultimately felt that

11

Mr. Naqvi had "the most potential to fulfill the duties" of the job and was the "best fit for the job." *Id.* Because Defendant has articulated "legitimate, non-discriminatory" reasons for selecting Mr. Naqvi over Plaintiff for the 2003 Environmental Protection Specialist 5 position, the burden returns to Plaintiff to establish that Defendant's stated reasons are pretextual.

As has been discussed above, Plaintiff may establish pretext by showing that Defendant's stated reasons had no basis in fact; that Defendant's stated reasons were not the actual reasons; or that Defendant's stated reasons were insufficient to explain its decision. Plaintiff reports that she received a myriad of answers in response to her inquiries regarding what Defendant's hiring decision was based on, including that Mr. Naqvi was "the best fit" for the position. *See, e.g.,* Docket Entry No. 30. Plaintiff contends that when she attempted to ascertain exactly what made Mr. Naqvi "the best fit" for the position, she again received a myriad of answers, and she notes that Ms. Washburn acknowledged that "there was a subjective aspect to interviewing." *See, e.g.,* Plaintiff's Dep., Ex. 6. Plaintiff asserts that Defendant's myriad of stated reasons are "totally false, contradictory and/or insufficient to explain why Plaintiff was not selected," and that "the best fit" and "subjective aspect" arguments are particularly pretextual. *See, e.g.,* Docket Entry No. 30.

Plaintiff argues that different employees of Defendant gave different explanations for her rejection at different times to different people, and that Defendant's reasons must therefore be pretextual. Docket Entry No. 30. For example, Plaintiff notes that, although Ms. Mann responded to the EEOC that Plaintiff indicated in the interview that "she liked to have tasks," and was therefore not considered to be a "self-starter" like Mr. Naqvi (Plaintiff's Dep., Ex. 9), Ms. Watts testified the opposite, stating: "The thing that sticks out in my mind the most was the

12

question regarding whether or not they considered themselves self motivated or task oriented. And the fact that she said self motivated" (Watts Dep., p. 21). Plaintiff notes that both she and Mr. Naqvi answered the written interview question, "Would you describe yourself as a self-starter or as a task-oriented worker, working assigned work?," in substantially the same manner: Plaintiff's response to the question was, "Both. - am self motivated & likes tasks to know what to do when directed by a report or log" (Mann Dep., Ex. 6); and Mr. Naqvi's response to the question was, "Both. Depending on situation. Will move forward on tasks. Depends on what needs to be done" (Mann Dep., Ex. 3). Plaintiff cites these inconsistencies as evidence of pretext.

Plaintiff notes that she personally interviewed Mr. Naqvi when he applied for his Environmental Specialist 3 position and that she directly supervised him in that position; that she had significantly more experience than Mr. Naqvi; and that Mr. Naqvi did not have any technical guidance drafting experience or any "significant supervisory experience or training." Docket Entry No. 30. With regard to their experience, Plaintiff notes both her own responses and those of Mr. Naqvi to written interview questions (2)(c) and (4)(a). Interview question (2)(c) states: "Do you have any experience writing regulations, policy, guidance?" Mann Dep., Exs. 3; 6. Mr. Naqvi responded: "No" (Mann Dep., Ex. 3), while Plaintiff responded: "Wrote closure guidelines in Georgia. Worked w/ attorney on reg. interpretation/writing new regs." Mann Dep., Ex. 6. Interview question (4)(a) states: "Discuss any workgroup/committee experience you have." Mann Dep., Exs. 3; 6. Mr. Naqvi answered: "Committee right now but haven't met yet (CAC Committee)" (Mann Dep., Ex. 3), while Plaintiff answered: "Corrective Action Backlog Com. - GA, regulatory committee in GA. Corrosion Expert for the State of Georgia."

13

Mann Dep., Ex. 6.

Plaintiff maintains that Defendant's responses to the EEOC inquiries were disingenuous. Docket Entry No. 30. Plaintiff specifically notes Defendant's EEOC response which stated that her experience as an inspector was not as strong as Mr. Naqvi's military experience because "[a]n inspector looks at an underground storage tank system and identifies leaks," while "Mr. Naqvi's military experience dealt more with corrective action and remediation of environmental problems caused by leaks." Plaintiff's Dep., Ex. 9. Plaintiff argues that the written responses to interview question (2)(a) demonstrate that Defendant's EEOC response noted above must be pretextual. Docket Entry No. 30. Interview question (2)(a) states: "Discuss all corrective action experience you have, i.e., experience with investigation and/or clean-up of environmental contamination." Mann Dep., Exs. 3; 6. Plaintiff answered: "Opt. Env. Prot. Georgia - 10 yrs as an inspector - Lead person or tech. assistance corrective action- lead to eliminate 600+ backlog. All in UST program." Mann Dep., Ex. 6. Mr. Naqvi answered: "Have been doing this job for UST (200-250 sites) for 3 years. Present time, only 4 sites w/ CA systems." Mann Dep., Ex. 3. Plaintiff argues, "To suggest that Plaintiff had no real corrective action experience and that Mr. Naqvi's reported three years of experience while supervised by Plaintiff (there is no mention of corrective action in the military in the notes) was superior to Plaintiff's experience is not supported by the interview notes." Docket Entry No. 30.

In response to Defendant's Interrogatory No. 4, Plaintiff states: "During [Mr. Naqvi's] last performance [*sic*], I gave him several 2's on his performance evaluation, but was told by upper management to change it because it would affect getting additional points if he decided to get another job." Plaintiff's Dep., Ex. 12. Plaintiff argues that upper management's instruction

14

to change her evaluation of Mr. Naqvi is suspect.  Docket Entry No. 30.

Plaintiff notes that Defendant responded to the EEOC that its decision not to promote Plaintiff was based in part on the fact that Plaintiff did not bring her application to the interview, while Mr. Naqvi brought both his application and his resume to the interview.  Docket Entry No. 30.  Plaintiff reports: "I asked during the interview if I needed to send them a copy of my resume, the answer that was given me was that if we need it we would let you know."  Plaintiff's Dep., Ex. 12.  With regard to his bringing "any kind of transcripts or records," Mr. Naqvi testified: "I asked them, and they said there's no need because they already had them."  Naqvi Dep. P. 14.  Although not directly contradictory, Plaintiff challenges Defendant's responses and the veracity of the weight accorded to Plaintiff's failure to bring her application to the interview, and proffers it as evidence of pretext.  Docket Entry No. 30.

Defendant also told the EEOC that the "interviewers were impressed that Mr. Naqvi was working on his master's degree, and that he was doing research with the United States Geological Survey on groundwater flow in a karst environment," and that the interviewers had also been impressed by the fact that Mr. Naqvi had "taken the initiative to put together a spreadsheet for technical guidance document to help review."  Plaintiff's Dep., Ex. 9.  Plaintiff notes that, although Defendant contends that it was particularly impressed with Mr. Naqvi's research, Mr. Naqvi testified that he was not asked any follow-up questions about his research during his interview.  *See* Naqvi Dep., p. 23.  Plaintiff cites this inconsistency as evidence of pretext.

Plaintiff additionally argues that "Defendant has exaggerated the significance of Mr. Naqvi's spreadsheet and research."  Docket Entry No. 30.  Plaintiff notes that Mr. Naqvi testified

15

that he did not create a new document, but rather, just simplified a pre-existing state document, and that he did so for his own use and clarification on how to do specific calculations. *See* Naqvi Dep., pp. 26-28. With regard to Defendant's assertion that Mr. Naqvi's development of a spreadsheet was an indicator of initiative, and thus, something that weighed positively in his favor, Plaintiff notes that she, too, developed, on her on initiative, a spreadsheet to be used in the workplace. Mann Dep., Ex. 6. Plaintiff cites her answer to written interview question 6, in which she wrote: "Example [from her career where she was able to identify a problem, come up with and suggest a solution which she then successfully implemented] - spreadsheet data base format of assignments of staff - Are they meeting their goals, reduced necessity for so many personal contacts - created clerk database." *Id.* Plaintiff argues that Defendant's "exaggeration" of Mr. Naqvi's modification of a pre-existing document as an indicator of initiative is further evidence of pretext. Docket Entry No. 30.

As has been discussed, in order to defeat Defendant's properly pleaded Motion for Summary Judgment, Plaintiff must adduce affirmative evidence demonstrating that there is a genuine issue for trial, and the Court must view that evidence in the light most favorable to the non-moving party. Viewing the evidence in the light most favorable to Plaintiff, Plaintiff has proffered sufficient evidence in a form required by Fed. R. Civ. P. 56, to raise a genuine issue as to material fact with regard to whether Defendant's stated reasons for selecting Mr. Naqvi for the 2003 Environmental Protection Specialist 5 position are pretextual.

### IV. Conclusion

For the reasons set forth above, the undersigned concludes that Plaintiff has raised a genuine issue as to material fact with regard to whether Defendant's stated reasons for selecting

16

an alternate candidate for the position that Plaintiff sought are pretextual.  Defendant is not

entitled to a judgment as a matter of law, and Defendant's Motion for Summary Judgment will

therefore be DENIED.

An appropriate Order will be entered.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge

17